UTAH WELFARE RIGHTS ORGANIZA-TION, a non-profit corporation organized under the laws of the State of Utah, the National Welfare Rights Organization, Bonnie Batchelder, Joann Byrge, Marie Darling, Diana Herbert, and Christine Tuers, individually and on behalf of their minor children, and on behalf of all other persons similarly situated, Plaintiffs,

v.

Richard P. LINDSAY, Director, Division of Family Services of the State of Utah, individually and in his capacity as Director of the Division of Family Services of the State of Utah, Honorable Calvin L. Rampton, Governor of the State of Utah, individually and in his capacity as the Governor of the State of Utah, Ward C. Holbrook, Executive Director of the Department of Social Services of the State of Utah, individually and in his capacity as Executive Director of the Department of Social Services of the State of Utah, David Duncan, Chairman of the Board of Family Services of the State of Utah, individually and in his capacity as Chairman and as a member of the Board of Family Services of the State of Utah,

Oma Wilcox, Vice-Chairman of the Board of Family Services of the State of Utah, individually and in her capacity as Vice-Chairman and as a member of the Board of Family Services of the State of Utah, Virginia Roberts, member of the Board of Family Services of the State of Utah, individually and in her capacity as a member of the Board of Family Services of the State of Utah, Bruce Parsons, member of the Board of Family Services of the State of Utah, individually and in his capacity as a member of the Board of Family Services of the State of Utah, M. James MacFarlane, member of the Board of Family Services of the State of Utah, individually and in his capacity as a member of the Board of Family Services of the State of Utah, Defendants.

No. C 276-69.

United States District Court,
D. Utah, C. D.
July 17, 1970.

**296**

⊜⇒211

David S. Dolowitz, Salt Lake City, Utah, for plaintiffs.

Vernon B. Romney, Atty. Gen., and K. Ralph Raat, Asst. Atty. Gen., for defendants.

Before LEWIS, Chief Circuit Judge, and ARRAJ and CHRISTENSEN, District Judges.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

The plaintiffs in this case are several individual welfare recipients of Aid to Families with Dependent Children

(AFDC). The defendants are officials of the State of Utah who administer this program. Plaintiffs allege that Utah's Public Assistance Act of 1961 and the administration thereof are not in conformity with the Federal Social Security Act of 1935 in several respects, and that as a matter of federal statutory law plaintiffs are entitled to larger monthly grants than they are now receiving. Plaintiffs also claim that Utah's statutory scheme for the general distribution of welfare funds results in a disproportionately small allocation of grants to large households as compared with households having four or fewer members, and also a disproportionately small grant to AFDC recipients as compared with Aid to the Blind recipients, and that such unequal treatment is an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

The level of payments to AFDC recipients in Utah is governed by statute. Ceilings applicable to most of Utah's general welfare programs are established, and consist of "dollar maximums" placed upon the welfare grant a household can receive according to the size of the household. The dollar maximums were established by the state legislature in 1961, limiting the monthly welfare payments a household can receive as follows: in a one-person case, $80; two-person case, $128; three-person case, $152; four-person case, $172; five and up to and including seven-person cases, an additional $19 per person; and eight or more person cases, an additional $13 per person. The Public Assistance Act of 1961, Utah Code Ann. § 55–15–24 (Supp. 1969).[1] The

---

1. Utah Code Ann. § 55–15–24 (Supp. 1969) provides:

Public assistance grants for or in behalf of any one case in any one month shall be subject to the following maximums: one-person case, $80; two-person case, $128; three-person case, $152; four-person case $172; for five and up to and including seven-person cases, an additional $19 per person; and for eight or more person cases, an additional $13 for each person.

The foregoing maximums shall be adjusted upward or downward in direct ratio to increases or decreases in the United States All-items Consumer Price Index prepared by the department of labor. If the Consumer Price Index has increased sufficiently to require an increase in public assistance grants and funds are not available to pay for the increase, grant changes need not be made until funds are available. Individual items in the assistance standards shall be in-

1961 base figures have remained unchanged, but the statute requires that these base figures be adjusted in direct ratio to changes in the United States All-Items Consumer Price Index. These amounts as adjusted establish a ceiling or maximum on the grant to a particular size household. Since the monetary ceilings even as adjusted are below the recognized need of all sizes of households, the "dollar maximums" in effect govern the size of AFDC and other welfare grants.

But the level of payments need not under Utah law be equal to the updated dollar maximums. *See* Utah Code Ann. § 55–15–24 (Supp. 1969). In reconciling the individual grants to be distributed to AFDC recipients, as well as to other welfare recipients, with funds made available for welfare purposes by legislative appropriations, the state administrators have authority to reduce updated dollar maximums by a *uniformly-applied* percentage to determine the level of payments to all AFDC recipients. It is admitted by the state that the legislature in formulating the 1961 base figures did not rely upon any statistical or other economic, social or factual studies, and that from 1966 to 1969 the increase in the level of payments to AFDC recipients

in Utah has not kept pace with the rise in their living costs.

Unconnected with the calculation of the level of payments is Utah's Needs Budget which is stipulated to reflect in the pertinent years actual living costs (or minimum subsistence level) of welfare recipients according to the sizes of their households. Both federal and state laws require that a "needs budget" be maintained. *See* Utah Code Ann. § 55–15–21 (Supp. 1969); 42 U.S.C.A. §§ 302, 602, 1202, 1352 (1969). Utah's Needs Budget is based upon a survey of actual living costs conducted by the state in 1961, and the results of this survey were updated in 1966 and 1969 by an adjustment in direct proportion to changes in the United States Consumer Price Index.

Comparison of Utah's Needs Budget with the level of payments yields the following conclusions: Although the total AFDC grant to a household will increase as additional members are added to the household, the percentage of actual need fulfilled by the AFDC grants (as well as amount paid per capita) decreases as additional members are added to a household. For example, whereas a household of two members under Utah's dollar maximum system received in 1969 an AFDC grant of $144 which is equal to 79% of

creased or decreased as the corresponding items in the United States Consumer Price Index increase or decrease. The maximums set forth and the Consumer Price Index shall be considered standards as of January 1961.

Maximum for public assistance grants may be exceeded for the purpose of meeting any or all of the following special item costs:

(1) Vendor or direct payments for dental or other types of remedial care;

(2) Institutional and nursing home care;

(3) Boarding home care;

(4) Assistance *as provided for in section* 55–15–23, subsection (5) (general assistance);

(5) Restaurant meals for those persons without housekeeping facilities;

(6) Assistance to persons temporarily subjected to extraordinary problems of living *by reason of their particular, special* situations.

Any recipient of aid for the blind shall be entitled to an amount of aid which, when added to the income of the recipient from all other sources, equals a minimum of one hundred dollars per month. Where it is found that the need of a recipient exceeds the minimum provided in this section, he shall be entitled to receive an additional amount found necessary to meet his need. Any additional amount is intended to provide additional assistance to persons with needs arising because of circumstances and situations not common to all recipients, which are not included or not adequately covered by the minimum allowances. Amounts of income and resources shall be exempted as required or authorized by federal law or regulation.

The board shall, by regulation, establish the conditions under which such exceptions may be made and approved.

its budgeted need, a household of nine received $287 which is equal to only 60% of its budgeted need. We have already mentioned that the level of payments in Utah has not kept pace with the increase in cost of living, but another aspect of the same problem is that the level of payments has not kept pace with increases in Utah's Needs Budget. Although family living costs as reflected in the Needs Budgets from 1966 to 1969 have increased between 11 and 12 percent (the exact percentage depending upon the size of the family), the increase in the size of AFDC grants as well as other welfare categories over the same period has been only 4.86%.

Plaintiffs' constitutional claims are as follows:

1) That Utah's dollar maximums set according to the size of the family result in an allocation of welfare monies in such a way that families of five or more members receive grants representing a percentage of their actual needs disproportionately less than the percentage received by families of four or fewer members, and that such practice constitutes an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment;

2) that Utah's establishment of more liberal standards in the form of income and property exemptions for Aid to the Blind recipients than for any other category of Public Assistance recipients including AFDC recipients is an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment;

3) that the practice of paying welfare recipients only a percentage of their recognized actual need or living costs rather than 100% is violative of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Plaintiffs' statutory claims are as follows:

1) That section 402(a) (23) of the Social Security Act, 42 U.S.C.A. § 602(a) (23) (1969), requires that Utah's 1969 level of payments to AFDC recipients be increased from 1966 levels in an amount which is directly proportional to the increase in cost of living as reflected by Utah's Needs Budget over the same period;

2) that the Social Security Act, 42 U.S.C.A. §§ 302, 602, 1202, 1352 (1969) requires that Utah, which allocates welfare funds on a dollar maximum system according to the size of the household, adjust its system of allocating AFDC grants so that the grants represent a uniform percentage of a family's budgeted need regardless of the size of the family.

Upon motion of the plaintiffs and stipulation between the parties, a claim of plaintiffs that the Social Security Act, 42 U.S.C.A. § 301 et seq. (1969), requires the State of Utah to pay 100% of budgeted need to AFDC recipients has been dismissed with prejudice by order of the single judge. We concur in this dismissal. Plaintiffs have also moved that their claim of unconstitutionality as to this point be dismissed without prejudice; this motion was not ruled upon by the single judge and will be dealt with in a subsequent portion of this opinion.

 This court has jurisdiction over the constitutional claims presented by plaintiffs, and since essentially the same factual structure is involved and decision on constitutional grounds might be avoided by a decision on the statutory grounds raised, the statutory claims are pendant to the other claims and should be considered first. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). *See also* Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970).

The statutory claims first will be discussed.

## I

Plaintiffs maintain that section 402(a) (23) of the Social Security Act, 42 U.S.C.A. § 602(a) (23) (1969), requires that Utah's 1969 level of payments to AFDC recipients must be at a level represent-

ing an increase over 1966 levels in direct proportion to the increased living costs as reflected by Utah's Needs Budget.

As indicated at the outset, Utah updates its dollar maximums and then in reconciling funds available with level of payments it reduces the adjusted dollar maximums by a uniform percentage to determine the level of payments. The size of the grant to AFDC recipients has increased each year, but the increase has not kept pace with the rise in their living costs.

■ Rosado v. Wyman, *supra,* is controlling on this issue. It is clear under the holding of *Rosado* that federal law does not require that all AFDC grant levels keep pace with increases in the cost of living, and that any requirement of this nature would be applicable to Utah, if at all, only by virtue of the fact Utah computes its grants on the basis of maximums.

Section 402(a) (23) of the Social Security Act of 1935 provides:

A State plan for aid and services to needy families with children must * * * (23) provide that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted.

42 U.S.C.A. § 602(a) (23) (1969).

According to *Rosado* section 402, as above quoted, invalidates any state program that substantially alters the content of the standard of need in such a way that it is less than it was prior to the enactment of the section. While section 402 precludes a state from obscuring the abstract standard of need, economic and budgetary realities are the factors involved in establishing a state's level of payments to AFDC recipients. The statute then is an attempt to force the state to be cognizant of the true extent to which actual assistance falls short of actual standards of need, rather than an attempt to force states to pay benefits equal to the standard of need. Utah's Needs Budgets are stipulated to reflect actual living costs in the pertinent years.

■ After recomputing its standard of need in accordance with the demands of Section 402, a state may pare down payments of benefits to accommodate budgetary realities either by reducing the percent of benefits paid or by changing to a percent reduction system. 397 U.S. at 413–14 & n.17, 90 S.Ct. at 1218.

■ Section 402, as above quoted, also requires that any maximums the state imposes on the amount of aid paid to families will have to be proportionately adjusted to reflect fully changes in living costs. Concerning this clause of section 402, the Court in *Rosado* stated:

[B]y imposing on those States that desire to maintain "maximums" the requirement of an appropriate adjustment, Congress has introduced an incentive to abandon a flat "maximum" system, thereby encouraging those States desirous of containing their welfare budget to shift to a percentage system which will more equitably apportion those funds in fact allocated for welfare and also more accurately reflect the real measure of public assistance being given. (397 U.S. at 413–414, 90 S.Ct. at 1218.)

We gather from the language a rather clear indication that section 402 necessarily has an impact on the level of payments in those states which establish grant levels by maximums. Thus, section 402 not only requires that state maximums be proportionately adjusted to reflect fully increases in living costs, but also requires upward adjustment of a grant the actual amount of which is established by a maximum. In expressing this construction of section 402 the Supreme Court apparently adopted the rationale of HEW set forth in the *amicus* memorandum filed in *Rosado.* This memorandum pointed out why Congress might wish to distinguish be-

tween a percentage reduction of grants determined by a maximum and a percentage reduction of grants calculated on a percentage-of-need formula:

Maximums, whether so many dollars per individual or a total number of dollars per family, have an arbitrary aspect lacking from ratable reductions, since their application means that one family or individual will receive a smaller proportion of the amounts he is determined to need under the state's test than another family or individual. Where percentage reductions are used, the payment of every family is reduced proportionately (although this, in turn, could work hardships unequally on small families, less able to spread expenses, if the reduction were substantial). * * * A decision not to allocate from a state's resources to its poor all they need can never be a comfortable one; making that decision in terms of a percentage formula, however, not only is probably more fair as among the various recipients of assistance, but also makes quite plain the character of the decision being made—and so quite possibly increases political pressures against it, and a willingness to forego other possible uses of state resources in order to avoid or reduce to a minimum the cuts made.

■ The argument of the State of Utah in principle is that section 402 was intended by Congress to have no effect on the level of payments, and, hence, that an across the board percentage reduction of grants, as distinguished from a reduction of maximums, is consistent with the statute. We believe, however, in light of *Rosado* that a percentage reduction of the level of payments is under section 402 permissible only when the level of payments is calculated on the basis of a percentage-of-need formula, and not when the level of payments is determined on the basis of maximums as is the case in Utah.

■■ "Maximums" for the purposes of section 402 has two possible meanings in its application to Utah law. We have described a legal ceiling on grants according to the size of a family which is statutorily established by Utah Code Ann. § 55–15–24 (Supp. 1969) and which has been referred to as Utah's "dollar maximums". In reconciling the individual grants to be distributed with the funds made available for welfare purposes by legislative appropriations, the state administrators have authority to reduce dollar maximums, which have been updated to reflect changes in living costs, by a uniformly-applied percentage in order to determine the level of payments. In each year, thus, the level of payments is in practical effect an "administrative maximum" set according to the size of the family. If one accepts the latter characterization, the maximums provision of section 402 requires only that Utah increase its actual grants in direct proportion to the increase in living costs. We believe this approach to be the sounder view since it rejects absolutes in payment levels which the legislative history indicates Congress did not favor, and yet gives effect to the statute's primary purposes of updating levels of payments based on maximums and of encouraging the states to abandon a system of arbitrary maximums.

■ Since Utah's grants, calculated on the basis of maximums, have not been increased by an amount in direct ratio to the increase in cost of living, we hold that Utah's present system of calculating AFDC grants is inconsistent with section 402(a) (23) of the Social Security Act, 42 U.S.C.A. § 602(a) (23) (1969). The State of Utah will be allowed a reasonable time to submit a revised program which is in accordance with the requirements of section 402 if the state desires to do so. We shall fix such time after affording opportunity to the parties for submission of briefs on the question. We retain jurisdiction, also, to review any revised plan which the State of Utah may choose to adopt, and if Utah chooses not to adopt a conforming plan, to issue an order restraining the use of federal monies for the purposes of the present program of the state. *See*

Rosado v. Wyman, 397 U.S. 397, 420–422, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

Since the other claims raised by plaintiffs will be relevant to any revised plan which Utah might submit, we deem it appropriate to presently discuss these claims.

## II

■ Plaintiffs claim that the Social Security Act of 1935, 42 U.S.C.A. §§ 302, 602, 1202, 1352 (1969) requires Utah to adjust its maximums system of allocating AFDC grants so that the grants paid to various size families represent a uniform percentage of a family's need regardless of the size of the family.

An overview of the grants which Utah families receive, as noted before, indicates that Utah increases the total grant as additional members are added to a household, but that as a household expands in size, the total grant fulfills a decreasing percentage of a family's standard of need. In view of finite resources available for welfare purposes, the Utah legislature has chosen to graduate the dollar maximums in such a way that small families receive grants representing a higher proportion of their actual need than is received by larger Utah families. Whereas a household of two received in 1969 a grant representing approximately 79% of its budgeted need, a household of sixteen received only 53% of its budgeted need.

The United States Supreme Court recently reviewed the applicable provisions of the Social Security Act, and held that a state's choice to set maximums which pay large families a disproportionately smaller percentage of actual need than is received by small families is consistent with the Act. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). *Cf.* Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d —— 1970). Accordingly, we reject plaintiffs' contention to the contrary.

## III

■ Plaintiffs assert that the above-described practice also has a constitutional dimension—that Utah's dollar maximums set according to the size of the family result in an allocation of welfare monies in such a way that large families receive grants representing a percentage of their actual needs disproportionately less than the percentage received by families of four or fewer members, and that such practice constitutes an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

In ruling on the Maryland system, the Court in *Dandridge* also discussed this constitutional issue. The Maryland system embodies a greater disparity in treatment than does the Utah system in that Maryland imposed a flat maximum which precluded any incremental grant for additional members of those households whose needs previously exceeded a certain established maximum. For the reasons stated in *Dandridge*, we hold that the unequal treatment of large families as compared with small families arising out of Utah's allocation of limited welfare monies is rationally based and involves no invidious discrimination. 397 U.S. at 483–487, 90 S.Ct. 1153.

## IV

■ Plaintiffs claim that Utah's establishment of more liberal standards in the form of income and property exemptions *for Aid to the Blind* recipients than for any other category of Public Assistance recipients is an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

Utah law provides that any recipient of aid for the blind shall be entitled to an amount of aid which, when added to the income of the recipient from all other sources, equals a minimum of one hundred dollars per month. Utah Code Ann. § 55–15–24 (Supp. 1969). Under the Utah dollar maximum levels, an AFDC recipient who constituted a house-

hold of one received in 1969 a monthly grant of $90. The State of Utah admits that the legislature did not rely upon statistical or other studies in establishing differential treatment of these two welfare categories. No other evidence was adduced in establishing the claim or defense.

We have found no authority supporting plaintiffs' contention, and no showing has been made here that convinces us that the state's classification is without rational basis. Here there are both apparent factual differences between the categories of recipients and also the distinction between two programs with different objectives. Under such circumstances, a state may prefer the needs of one group over the needs of another group without transgressing the Equal Protection Clause of the Fourteenth Amendment. *Cf*. Dandridge v. Williams, *supra*.

### V

■ Plaintiffs assert that the practice of the State of Utah of paying welfare recipients only a percentage of their recognized actual need or living costs rather than 100% of such need is violative of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Utah does pay AFDC recipients substantially less than 100% of their living cost as reflected in Utah's Needs Budget. To sustain plaintiffs' claim, however, would mean that a state could not enter into a welfare program unless it had the resources to fulfill 100% of the need of the recipients of the program. In view of the present clarity of the law to the contrary, the motion and stipulation that the claim be voluntarily dismissed without prejudice is denied, and that cause of action is dismissed with prejudice.

The parties are allowed twenty days for the filing of memoranda, if they be so advised, directed to the question of remedy, and particularly to the time that may be reasonable for compliance in harmony with the views herein expressed.

The views of HEW will be considered should it desire to submit a memorandum within the same time.

Thereupon, a supplemental order will be entered by the court.